THE O'FALLON COAL AND MINING COMPANY

*v.*

WILLIAM LAQUET.

*Opinion filed June 19, 1902—Rehearing denied October 15, 1902.*

1. DAMAGES—*measure of damages in action by a child for death of a parent—mines.* In an action against a coal company by a minor child for an alleged willful violation of the Mines act, resulting in the death of the plaintiff's father, a recovery is authorized for any direct damages sustained by the plaintiff on account of the death of his father, not exceeding the sum of $5000.

2. EVIDENCE—*when admission of immaterial evidence will not reverse.* In an action under the Mines act for failure of the defendant to furnish props and timbers, evidence that the plaintiff's intestate tried to borrow props on the day he was killed is immaterial, but its admission is not ground for reversal.

3. TRIAL—*challenge to the favor is triable without the intervention of triers.* Under our practice the competency of a juror, whether raised by principal challenge or challenge to the favor as at common law, is triable by the court without the intervention of triers, the court's action being reviewable on appeal or error under a proper assignment of error.

·*O'Fallon Coal Co.* v. *Laquet,* 89 Ill. App. 13, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM HARTZELL, Judge, presiding.

CHARLES W. THOMAS, for appellant.

HAMILL & BORDERS, and WEBB & WEBB, for appellee.

Per CURIAM: An action on the case was brought under sections 14 and 16 of the act providing for the health and safety of persons employed in coal mines, (Hurd's Stat. 1899, chap. 93,) by Julius Laquet, Fanny Laquet and William Laquet, children and heirs-at-law of Nicholas Laquet, deceased, against the O'Fallon Coal Company, for the alleged willful negligence of the latter in failing to furnish "props and cap-pieces" at the request of the

deceased, a miner working in said coal company's mine, in order to make safe and secure the roof of a room in which the deceased was working, in consequence of which negligence, on the 27th day of October, 1898, a portion of the roof of the room where he was working fell, and so injured him that he died on the following day. At the close of plaintiff's evidence, the court, on motion of defendant, dismissed the suit as to the plaintiffs Julius and Fanny, and afterwards it proceeded in the name of William Laquet alone, who was a minor of the age of fourteen years at the time of the death of his father and dependent upon him for support. The correctness of the court's ruling in dismissing the suit as to the adult plaintiffs is not here involved, and we express no opinion thereon. The jury returned a verdict for the plaintiff, fixing his damages at $3000. Of that amount $500 was remitted. Motion for new trial was then overruled, and the court rendered judgment for the plaintiff in the sum of $2500 and for costs. That judgment has been affirmed by the Appellate Court for the Fourth District.

At the close of all the evidence upon the trial the defendant requested the court to give an instruction in writing to the jury to find the defendant not guilty, which was refused, and it is now insisted, on behalf of the appellant, that such refusal was error. This contention is based on the claim that there was no evidence whatever produced upon the trial tending to show that the company failed to furnish required props, as provided by the statute under which the suit is brought. The declaration does not literally follow the language of the statute, which says, "the owner shall deliver the same [*i. e.*, props and cap-pieces] as required, with the miner's empty car," but simply avers that it was the defendant's duty to deliver the same "as required and when requested to do so by the miners," etc. No objection was made to the sufficiency of the declaration, but a plea of not guilty was filed thereto. The evidence does fairly tend to support

the allegations of the declaration,—that is, that deceased sent up a request for props, which were not furnished him. There was no error in refusing said instruction.

The court gave, at the instance of the plaintiff, the following instruction, which is assigned for error:

"The court instructs the jury that if you find a verdict in favor of the plaintiff, then, in assessing the plaintiff's damages, you may consider the pecuniary benefits which the plaintiff may have derived from the deceased had the deceased not been killed, at any age of deceased's life, provided you further find, from the evidence, that the plaintiff is the next of kin, dependent upon deceased for support."

Section 33 of the act under which the suit was brought is as follows: "For any injury to person or property, occasioned by any willful violations of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such willful violation or willful failure, as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives, not to exceed the sum of $5000." As applied to this case, that section authorized a recovery by the plaintiff for any direct damages sustained by him on account of the death of his father, not exceeding, however, the sum of $5000. What damages does a child sustain by the death of its father? Manifestly, the recovery can only be had for pecuniary loss, that loss being the value of the life of the parent. The rule for measuring the damages under statutes similar to ours is thus stated in the second edition of the American and English Encyclopedia of Law, (vol. 8, p. 914): "The damages in such a case must be suf-

ficient to compensate for the pecuniary loss which the decedent's wife or children, or both, have sustained in consequence of his death; and this is such a sum, and no more, as the deceased would probably have earned by his intellectual and bodily labor at his business, profession or trade during the residue of his probable life, which would have gone for the benefit of his wife and children. In estimating this, the decedent's age, business capacity, ability and disposition to labor, and his habits of living, are to be considered. To the foregoing rule the weight of authority adds that the value of the father's services in the attention to and care and superintendence of his children and family and in the education of his children, of which they are deprived by his death, should also be considered as an element of pecuniary damage." It is true, the language of the Mining act, under which this suit was brought, differs from that of chapter 70, authorizing a recovery for causing death by a wrongful act, neglect or default, and also from the language of the Dram-shop act, where the recovery may be had for an "injury to the means of support;" but the damages in either case must be left largely to the discretion of the jury under all the facts and circumstances of the case and the instructions of the court, it being impossible to accurately estimate the value of a human life. The foregoing instruction, though awkwardly drawn, did, we think, with reasonable fairness, submit the question of damages to the jury. At least we cannot see wherein it was calculated to mislead the jury to the prejudice of the defendant.

It appears that the court permitted a witness to testify, over defendant's objection, that the deceased tried to borrow props the day of his injury from other parties, and this, it is said, was error. We are unable to see what purpose the evidence could serve, and it might well have been excluded. It is contended by counsel for appellant that the evidence tended to show due care on

the part of the deceased, but it had no such effect. Moreover, in an action to recover for a willful violation of the statute, it makes no difference whether the plaintiff was or was not in the exercise of due care for his own safety. (*Carterville Coal Co.* v. *Abbott*, 181 Ill. 495.) But conceding that the objection to the testimony should have been sustained, there is nothing in this record from which it can be seen that its admission worked any injury to the defendant, and it was therefore not such prejudicial error as ought to work a reversal of the judgment below.

Upon the empaneling of the jury, counsel for defendant challenged one of the jurors "to the favor," and demanded triers, as at common law, to test his fitness. The court disregarded the demand and proceeded to question the juror as to his competency. At the conclusion of that examination counsel again demanded triers, but the request was again denied and the juror held competent. This ruling of the court is assigned for error. The practice here insisted upon is very unusual, to say the least. Under our practice the competency of a juror, whether raised by principal challenge or challenge to the favor as at common law, is triable by the court without the intervention of triers, and the ruling of the trial court as to the competency of a juror is reviewable upon appeal or writ of error. We can see no good reason for departing from that practice. The common law method of trying challenges would be cumbersome and attended with unnecessary delay in the trial of causes, without any beneficial results. It is said in the American and English Encyclopedia of Law (vol. 12, p. 357): "Even where, as in New York, there is still a distinction between principal challenges and challenges to the favor, the court is generally the trier of both, and the appointment of triers by the court is almost universally obsolete." If the court committed an error in holding competent the juror objected to, notwithstanding the challenge by the defend-

ant, it had the right to have that ruling corrected upon a proper assignment of error.

Other questions are raised upon this record, all of which have been duly considered, but we do not regard any of them as of sufficient importance to work a reversal of the judgment of the circuit court. They seem to have been properly disposed of in the opinion of the Appellate Court. The judgment of that court will accordingly be affirmed.                    *Judgment affirmed.*