CAROL PICKETT, Adm'r of the Estate of Doyle Pickett, Deceased, Plaintiff-Appellant, v. YELLOW CAB COMPANY *et al.*, Defendants (Power Contracting & Engineering Corporation, Defendant-Appellee).

First District (2nd Division)   No. 1—88—0381

Opinion filed April 4, 1989.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Fredric J. Grossman, and Edward M. Kay, of counsel), for appellant.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy Jo Arnold and Philip W. Domagalski, of counsel), for appellee.

Anesi, Ozmon, Lewin & Associates, Ltd., Asher, Pavalon, Gittler & Greenfield, Ltd., and George M. Elsener & Associates, Ltd., all of Chicago (Nat P. Ozmon, Lester Asher, Eugene I. Pavalon, George M. Elsener, Curt N. Rodin, and Richard A. Kimnach, of counsel), for *amici curiae* Illinois Federation of Labor and Congress of Industrial Organizations, Chicago and Cook County Building and Construction Trades Council, Ironworkers District Council of Greater Chicago, and Tri-City Building Trades Council of Chicago.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Kevin R. Sido, Joshua G. Vincent, and Bruce L. Carmen,

of counsel), for *amici curiae* Central Illinois Builders of Associated General Contractors Consulting Engineers Council of Illinois, Home Builders Association of America, Illinois Architect Engineer Council, American Institute of Architects, Illinois Defense Counsel, Illinois Manufacturers' Association, and Illinois Society of Professional Engineers.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff appeals from the dismissal of that portion of her amended complaint in which she sought damages for loss of her decedent's society and companionship, arguing that these damages are available under the Structural Work Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*).

Plaintiff's husband died as a result of injuries he sustained when he fell from a scaffold on which he had been working in connection with the construction and repair of a building in Northbrook, Illinois. Defendant was one of the construction contractors and is named in counts III and IV, which are pleaded under the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69), and counts V and VI, which are pleaded in negligence. Defendant filed a motion for judgment on the pleadings as to paragraph 9 of count III, seeking an order dismissing that portion of that paragraph claiming damages for "loss of society and companionship of the [d]ecedent." That motion was granted and plaintiff was given leave to file a further amended pleading; however, rather than doing so, plaintiff moved to vacate the order of dismissal and for leave to file a written response to defendant's motion. The trial judge granted plaintiff leave to file her memorandum, but denied her motion to vacate, finding that loss of society and companionship was "recoverable only under the Wrongful Death Act [Ill. Rev. Stat. 1987, ch. 70, pars. 1, 2] as an element of damage in the wrongful death action." The judge then entered judgment on the pleadings as to the allegations in count III relating to loss of society and companionship under the Structural Work Act and found that there was no reason to delay enforcement or appeal of the order. This appeal followed.

OPINION

Section 9 of the Structural Work Act provides in pertinent part as follows:

> "For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of

loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the surviving spouse of the person so killed, the lineal heirs or adopted children of such person, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives." Ill. Rev. Stat. 1987, ch. 48, par. 69.

Plaintiff argues that section 9, in creating a cause of action in favor of the structural worker's surviving spouse, heirs, or dependents, focuses upon the damages suffered by them as a result of his having lost his life. Defendant maintains that the Act centers not upon the losses experienced by the widow, heirs or dependents of the decedent, but upon the damages that would have been incurred by the worker had he survived his injury.

Plaintiff contends that "direct damages" include the value of the decedent's society and companionship which she and her children lost as a result of his death, and cites the provisions as to damages contained in the Coal Mining Act (Ill. Rev. Stat. 1987, ch. 96½, par. 1007), which, she claims are in *pari materia* with section 9 of the Structural Work Act (see *Mitseff v. Acme Steel Co.* (N.D. Ill. 1962), 208 F. Supp. 805, 807; *Scully v. Otis Elevator Co.* (1972), 2 Ill. App. 3d 185, 275 N.E.2d 905), pointing out that they have been interpreted to include the value of the decedent's society and companionship. (*O'Fallon Coal Co. v. Laquet* (1902), 198 Ill. 125, 64 N.E. 767.) Plaintiff adds that more recent decisions have made clear that the value of a decedent's society and companionship are elements of the pecuniary damages recoverable in a death action brought under the Structural Work Act. *Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 478 N.E.2d 469; *Scully v. Otis Elevator Co.* (1972), 2 Ill. App. 3d 185, 275 N.E.2d 905.

In *O'Fallon*, plaintiff, the son of a deceased worker, was awarded damages under the Coal Miners Act (Ill. Rev. Stat. 1899, ch. 93 (Hurd)), which provided for the recovery of direct damages by an injured worker and "in case of loss of life *** a like recovery of damages" for dependents. (*O'Fallon*, 198 Ill. at 127.) On appeal, defendant challenged the following jury instruction:

"[I]f you find a verdict in favor of the plaintiff, then, in assessing the plaintiff's damages, you may consider the pecuniary benefits which the plaintiff may have derived from the deceased had the deceased not been killed, at any age of deceased's life, provided you further find, from the evidence, that

the plaintiff is the next of kin, dependent upon [the] deceased for support." (198 Ill. at 127.)

In upholding the award, the court quoted from the American and English Encyclopedia of Law (8 Am. & Eng. Encyc. Law 914), stating the rule for measuring the damages "under statutes similar to ours":

" 'The damages in such a case must be sufficient to compensate for the pecuniary loss which the decedent's wife or children, or both, have sustained in consequence of his death; and this is such a sum, and no more, as the deceased would probably have earned by his intellectual and bodily labor at his business, profession or trade during the residue of his probable life, which would have gone for the benefit of his wife and children. In estimating this, the decedent's age, business capacity, ability and disposition to labor, and his habits of living, are to be considered. To the foregoing rule the weight of authority adds that the value of the father's services in the attention to and care and superintendence of his children and family and in the education of his children, of which they are deprived by his death, should also be considered as an element of pecuniary damage.' " (*O'Fallon*, 198 Ill. at 127-28.)

The court continued:

"It is true, the language of the Mining act, under which this suit was brought, differs from that of chapter 70, authorizing a recovery for causing death by a wrongful act, neglect or default, and also from the language of the Dram-shop act, where the recovery may be had for 'an injury to the means of support;' but the damages in either case must be left largely to the discretion of the jury under all the facts and circumstances of the case and the instructions of the court, it being impossible to accurately estimate the value of human life." (198 Ill. at 128.)

The court then held that the challenged instruction, "though awkwardly drawn," did with "reasonable fairness, submit the question of damages to the jury." 198 Ill. at 128.

In *Scully*, plaintiffs, the widow and children of a deceased worker, recovered damages under the Structural Work Act. On appeal, defendant argued that the instruction on damages was improper because it directed the jury to consider pecuniary loss rather than direct damages, resulting in a grossly excessive award. The appellate court upheld the instruction, holding that "the purported distinction" between the terms "direct damages" and "pecuniary loss" was "semantical rather than substantive." (2 Ill. App. 3d at 199-200.) The court then added:

" '[D]irect damages" as utilized in the statute means the pecuniary losses to which plaintiffs were subjected. Pecuniary damages have traditionally been held to consist of the value of the sum of monetary contributions and personal services the decedent would have provided. (*O'Fallon Coal Co. v. Laquet.*)" (2 Ill. App. 3d at 200.)

The court discussed the decedent's age, health, and his life expectancy at the time of his death, his job, earning potential and personal expenses, then continued:

"With respect to the personal services decedent rendered his family, the evidence reveals that he did all the plumbing and helped the electrician and heating contractor. He did the painting, decorating, and landscaping. After completion of the home, he built a recreation room.

Decedent spent most of his non-working hours at home. The family did everything together such as going on picnics and visiting friends. He took John to Mass and almost every place he would go to visit and do chores. He helped the children at bedtime and taught them their evening prayers. He also did all the repair work around the home." (2 Ill. App. 3d at 200-01.)

Based on such evidence, the court upheld the instruction and affirmed the jury's award.

In *Fedt*, defendant in a Structural Work Act case argued on appeal that the jury verdict was excessive. The appellate court disagreed, stating:

"The jury's award of $1 million for the death of Marc Clay must also be sustained. There is no fixed monetary standard for evaluating a human life, and the award of damages greatly depends on the sound judgment of the jury. [Citations.] Here, the jury was able to consider the testimony of Clay's mother, father, and sister as to decedent's work habits, employment history, education, and ambitions, and his relationship with and contributions to his family. The verdict had ample support in the record and was not the result of passion or prejudice." 132 Ill. App. 3d at 1072.

Defendant contends that the *Fedt* court's references to decedent's education, ambitions, relationship with and contributions to his family reflect his probable future income and the likelihood that he would have contributed to the support of his family. It further claims that the statements in *Scully* regarding the family's picnics and visits to friends must be seen as surplusage or *dicta,* since the express ruling of the court was that the amount of the verdict in excess of future

contributions to support represents the value of decedent's personal service. Defendant also maintains that *O'Fallon* did not allow recovery for loss of society, but only for loss of support and personal services.

Defendant insists that the purpose of section 9 of the Structural Work Act is to compensate an injured worker for injuries sustained as a result of an unsafe workplace, and, in the event of death rather than injury, it provides for "a like recovery" to compensate dependents for loss of support. It contrasts the Structural Work Act with the Wrongful Death Act, which homes on losses experienced by a widow and next of kin and which does allow recovery for loss of society. In support of its argument defendant relies on *Mitseff v. Acme Steel Co.* (N.D. Ill. 1962), 208 F. Supp. 805, which held that the dollar limitation on awards that the Wrongful Death Act does not apply in a Structural Work Act death case. In *Mitseff*, Acme argued that the language "like recovery of damages" in section 9 meant "like unto Wrongful Death recovery." (208 F. Supp. at 807.) The court disagreed, stating:

> "The proper interpretation of the phrase 'a like recovery of damages' as used in the Scaffolding Act [the Structural Work Act] would appear to be that in the event of death rather than injury by virtue of a violation of the act, the same measure of damages applicable in the event of injury, *i.e.*, 'any direct damages sustained thereby' is to be applied. *** It is obvious *** that the legislature intended no correlation between the two statutes [Structural Work Act and Wrongful Death Act]." 208 F. Supp. at 807-08.

Defendant also relies on *Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 438 N.E.2d 1187, which held that section 9 of the Structural Work Act does not grant the spouse of an injured worker a right of action for loss of consortium. In so holding, the court stated that "[t]he purpose of the Act clearly is to compensate the worker for injuries sustained upon an unsafe workplace." (108 Ill. App. 3d at 469.) Defendant argues that the holding in *Martin* means that dependents can recover only that amount which a worker would have recovered had he been injured, *i.e.*, loss of support and personal services.

*Amici* for reversal argue that direct damages under section 9 are measured by pecuniary injury (*Scully v. Otis Elevator Co.* (1972), 2 Ill. App. 3d 185, 275 N.E.2d 905), and pecuniary damages under the Wrongful Death Act include the value of loss of decedent's society (*Elliott v. Willis* (1982), 92 Ill. 2d 530); therefore, the Structural

Work Act must also allow such recovery. They maintain that *"Martin* has no precedential effect on the issue before this [c]ourt [because] the court in *Martin* nowhere construed the term 'direct damages.' " They also claim that *Martin* is distinguishable, because that case involved an injured rather than a deceased worker. Finally, *amici* argue that in order to award full compensation and deter future violations of the Act, this court must recognize the right to recover for loss of society. They assert that an injured worker can recover for intangible losses, such as pain and suffering, and therefore the dependent in a death action should be allowed to recover for loss of society.

*Amici* in support of affirmance contend that damages in a death action are to be no greater or less than the damages recoverable by an injured worker. They also argue that the definition of "pecuniary loss," as used in *Elliott*, is different from that employed in *O'Fallon* and *Scully*. Prior to *Elliott*, loss of society was not an element of pecuniary injury, and thus, although the term "pecuniary loss" was used in both *O'Fallon* and *Scully*, the plaintiffs in those cases did not recover for loss of society.

▇▇ ▇ Although the *O'Fallon, Scully* and *Fedt* courts mentioned the deceaseds' relationships with their families, it is not clear whether they did so only in relation to measuring the value of the deceased's personal services and likely contributions to their families, or whether the courts were considering the value of the loss of the decedents' society. However, we need not resolve this issue, because, as we have noted above, our supreme court held in 1982 that loss of society and companionship is an element of damages for pecuniary loss. (*Elliott v. Willis* (1982), 92 Ill. 2d 530.) In that case, plaintiff sought "the reasonable value of the society, companionship and conjugal relationship" that she had with her husband and which she had been deprived of because of his death. The issue on appeal was "whether loss of consortium is compensable as a 'pecuniary injury' under the Wrongful Death Act." (92 Ill. 2d at 534-35.) The supreme court answered affirmatively, stating:

> "Since we have said that the felicity and care of a father are capable of evaluation as 'pecuniary injuries' under the Wrongful Death Act, we are compelled to conclude that the companionship and conjugal relationship of a spouse are equally compensable as 'pecuniary injuries.'
>
> * * *
>
> The purpose of the Wrongful Death Act is to compensate the surviving spouse and next of kin for the pecuniary losses sustained due to the decedent's death. [Citations.] It is intended to

provide the surviving spouse the benefits that would have been received from the continued life of the decedent. The jury should have been instructed that the value of the decedent's companionship and conjugal relations could be considered in computing the damages to be recovered." (92 Ill. 2d at 538, 540.)

The court then held that Illinois Pattern Jury Instructions, Civil No. 31.04 (1965), which provides that in determining "pecuniary injuries" the jury may not consider "[t]he loss of decedent's society by the widow and next of kin" was no longer valid. 92 Ill. 2d at 541.

The *Elliott* court stated that damages under the Wrongful Death Act "are assessed in accordance with the loss to decedent's survivor's," and "[t]he test is a measurement of benefits of pecuniary value that the decedent might have been expected to contribute to the surviving spouse and children had the decedent lived." (92 Ill. 2d at 541.) The same measurement of damages is provided for in the Structural Work Act: "[T]he pecuniary benefits which the plaintiff may have derived from the deceased." *O'Fallon Coal Co. v. Laquet* (1902), 198 Ill. 125, 127, interpreting the "direct damages" provision of the Coal Miners Act.

Whether viewed from the technical focus of the legal optic or the more instinctive human eye, we see no reason why the term "pecuniary losses" should mean one thing under the Wrongful Death Act and another under the Structural Work Act. Nor do we perceive any need to erect a firewall between the two. The *O'Fallon* court did not expressly prohibit the recovery of loss of society, and, arguably, the holding in *Elliott* was at least inchoate in *O'Fallon*. In this connection we note that, although the legislature has had ample opportunity to amend the Structural Work Act since *Elliott* was decided, it has chosen not to do so. We must therefore assume that the legislature approves of the interpretation of "direct damages" to mean pecuniary loss, including loss of society. See *Independent Voters v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 90; 2A N. Singer, Sutherland on Statutory Construction §45.12, at 55 (Sands 4th ed. 1984).

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BILANDIC, P.J., and HARTMAN, J., concur.