(No. 71290.—

JAMES HARVEL *et al.*, Appellants, v. THE CITY OF
JOHNSTON CITY *et al.*, Appellees.

*Opinion filed January 23, 1992.*

MILLER, C.J., and HEIPLE, J., dissenting.

Thomas F. Crosby, of Winters, Brewster, Murphy, Crosby & Patchett, of Marion, for appellants.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Bruce L. Carmen and Brian K. McBrearty, of counsel), for appellee Lawrence A. Lipe & Associates.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Nat P. Ozmon, Curt N. Rodin and Richard A. Kimnach, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

Cassiday, Schade & Gloor, of Chicago (Timothy J. Ashe and Michael M. Tannen, of counsel), for *amici curiae* Edward Gray Corp. *et al.*

JUSTICE BILANDIC delivered the opinion of the court:

The plaintiffs, James and Barbara Harvel, filed a complaint in the circuit court of Williamson County against the defendants, the City of Johnston City (City) and Lawrence A. Lipe & Associates (Lipe), to recover damages sustained when James Harvel was injured at the construction site where he was working. The complaint alleged that James' injuries were the proximate result of the defendants' wilful failure to comply with certain safety provisions of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*). Counts I and II sought recovery for James' injuries, while counts III and IV sought recovery for Barbara's resulting loss of consortium. The defendants filed motions to dismiss counts III and IV of the complaint on the grounds that the Structural Work Act does not grant a cause of action for loss of consortium to the spouse of an injured worker and that the complaint failed to otherwise state a cause

of action under which Barbara could recover. The trial court granted the motions to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). The appellate court affirmed, holding that the spouse of an injured worker does not have a cause of action for loss of consortium under the Structural Work Act and that any common law consortium claim had been waived. (205 Ill. App. 3d 661.) This court granted Barbara Harvel's petition for leave to appeal (134 Ill. 2d R. 315). While this appeal was pending, the Harvels entered into a settlement agreement with the City and a third-party defendant. Accordingly, defendant Lipe is the sole appellee in this court. *Amicus* briefs were filed on behalf of both the appellee and the appellant.

According to the allegations in the plaintiffs' complaint, the City was in charge of the construction of a water treatment plant and had erected an elevated water retention tank as part of this project. The City had hired Lipe as its agent to direct, supervise and inspect the erection of the water treatment plant. On August 26, 1988, James was on the elevated water retention tank in the performance of his duties when he fell onto the concrete at the bottom of the tank, thereby sustaining permanent injuries.

Two issues are presented for review: (1) whether the Structural Work Act grants the spouse of an injured worker a cause of action for loss of consortium; and alternatively, (2) whether the spouse of an injured worker has a common law cause of action for loss of consortium. We first consider the plaintiff's claim that the Structural Work Act allows a right of action for loss of consortium to the spouse of an injured worker.

## I

Plaintiff Barbara Harvel premises her right to re-

cover for loss of consortium on section 9 of the Structural Work Act. That section provides:

"For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, *a right of action shall accrue to the party injured, for any direct damages sustained thereby*; and in case of loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the surviving spouse of the person so killed, the lineal heirs or adopted children of such person, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 69.)

The plain language of section 9 grants a cause of action to a "party injured" by wilful violations of the Act for any "direct damages" sustained thereby. Although this language does not expressly grant or deny a cause of action for loss of consortium, the appellate court construed it to bar the spouse of an injured worker from bringing a loss of consortium action. In reaching this conclusion, the court held that the term "party injured" was limited to those persons delineated in section 1 of the Act. That section provides:

"All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct or other structure, shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1987, ch. 48, par. 60.)

The appellate court determined that the phrase "party injured" used in section 9 was restricted to those " 'persons employed or engaged [on a structural device], or passing under or by the same.' " (205 Ill. App. 3d at 665, quoting Ill. Rev. Stat. 1987, ch. 48, par. 60.) Applying this restricted interpretation of the term "party injured," the court determined that Barbara Harvel had no cause of action for loss of consortium, because she was not injured while employed or engaged on a structural device or while passing under or by the same. (205 Ill. App. 3d 661; see also *Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468.) The court then defended the interpretation that it decided upon with the argument that "[i]f the legislature had meant for the spouse of an injured worker to have a cause of action, it would have inserted language permitting such an action." (205 Ill. App. 3d at 665.) We disagree with the appellate court's interpretation of the Act.

In this case, we are required to determine the scope of section 9 of the Structural Work Act, which creates a remedy for those injured as a result of wilful violation of the statute. Specifically, we must consider whether section 9 permits the spouse of an injured worker to bring a cause of action for loss of consortium. In construing a statute, our duty is to ascertain and give effect to the intention of the legislature. (*People v. Geever* (1988), 122 Ill. 2d 313, 324; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41.) An inquiry into legislative intent generally begins with the language of the statute. (*First National Bank v. Mutual Trust Life Insurance Co.* (1988), 122 Ill. 2d 116, 121.) The language of section 9 specifies that the remedial provisions may be invoked whenever there is an injury "to person or property" occasioned by wilful violation of the Act. In such circumstances, the "party injured" is

given a right of action for "direct damages sustained." We find nothing in the language of section 9 which suggests that the legislature intended to preclude the spouse of an injured worker from bringing a cause of action under the statute. The phrase "party injured" does not expressly refer solely to the structural worker who suffers the injury to his person or property. On the contrary, the phrase is broad enough to include an injured worker's spouse who suffers a loss of consortium as a result of a defendant's wilful violation of the Act. Had the legislature intended to grant a right of action solely to the injured worker, it could have clarified the statute by inserting express language to that effect. The legislature has not done so. Because nothing in the language of the statute prohibits an action by the spouse of an injured worker, it is appropriate for us to examine sources other than the language for evidence of the legislature's intent.

The policies underlying a statute are often regarded as a valuable source of legislative intent. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 317; *Brackett v. Osborne* (1964), 44 Ill. App. 2d 441.) Examination of the reason and necessity for the law, the evils which the legislature sought to remedy and the purposes intended to be accomplished is particularly important in cases such as this, where the statutory language is not clear. (*American Country Insurance Co. v. Wilcoxin* (1989), 127 Ill. 2d 230, 239; 2A N. Singer, Sutherland on Statutory Construction §45.09, at 40 (Sands 4th ed. 1984).) This court will presume that the legislature had a definite purpose in enacting the statute and drafted the statute so that each part would be in harmony with that purpose. (2A N. Singer, Sutherland on Statutory Construction §46.05, at 91 (Sands 4th ed. 1984); *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 389.) From this presumption proceeds the

rule that the general purpose of the whole act shall control and that all the parts shall be interpreted consistently with this purpose. If the language of a statute is susceptible to two constructions, one of which will carry out its purpose and another which will defeat it, the statute will receive the former construction. (2A N. Singer, Sutherland on Statutory Construction §46.05, at 91 (Sands 4th ed. 1984).) In addition, a situation which is within the object, spirit and the meaning of a statute is regarded as within the statute, even though it may not fall within the letter. *Burke v. Industrial Comm'n* (1938), 368 Ill. 554, 558.

When the language of section 9 is construed in light of the policies which motivated the legislature to enact the Structural Work Act, it is evident that the legislature intended to permit the spouse of an injured worker to bring an action for loss of consortium under the Act. The primary purpose of the Structural Work Act is to encourage safe construction practices so as to prevent injury to persons employed in extrahazardous occupations. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127.) Equally important to this preventive purpose, however, is the Act's objective of fully compensating those injured as a consequence of wilful violation of the Act. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 459-60 (the purpose of the Act "is to prevent accidents before they occur; failing that, to compensate those injured by extrahazardous but socially useful activities").) Our court has recognized that "[w]hen the statutory purpose of prevention is frustrated by a wilful violation and an accident follows, the *full burden of the loss must be laid on the wrongdoer, even if the victim was himself negligent.*" (Emphasis in original.) (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 460, quoting *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 467.) It has also been held that the

Act should be liberally construed to effectuate its protective and compensatory purposes. *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533.

We find that construing the term "party injured" in section 9 to include the spouse of an injured structural worker who suffers a loss of consortium is consistent with both the preventive and the compensatory purposes underlying the Structural Work Act. Allowing recovery for loss of consortium enhances the cost of a defendant's failure to adhere to the Act, and thereby assures that persons having charge of structural work activities will have the greatest incentive to provide workers with a safe place to work. Our holding will therefore "lessen the extent of the danger *** [and] afford 'broad protection to working men.' " (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127, quoting *Juliano v. Oravec* (1973), 53 Ill. 2d 566, 570.) In addition, permitting the spouse of an injured worker to pursue a cause of action for loss of consortium ensures that, when an injury does occur, the full burden of the loss will fall on those responsible for violating the Act. Indeed, the compensatory purpose of the Act is fulfilled only when a defendant, whose wilful violation of the Act causes an injury to a structural worker's person, is responsible for the direct damages inflicted upon both the structural worker and his or her marital relationship.

Allowing the spouse of an injured worker to bring a cause of action under the Act is also consistent with the legislative history of the statute. Analysis of the history of the Act demonstrates that the legislature intended the statute to protect not only structural workers, but their families too. (*Mitseff v. Acme Steel Co.* (N.D. Ill. 1962), 208 F. Supp. 805.) The language currently found in section 9 of the Structural Work Act is identical to that found in the first Structural Work Act (commonly called the Scaffolding Act), which was enacted in 1907. (Ill.

Rev. Stat. 1908, ch. 48, par. 88.) The language of the original statute was, in turn, copied from section 33 of the Mines and Miners Act, a statute enacted in 1899. (Ill. Rev. Stat. 1902, ch. 93, par. 33.) Consequently, the Mines Act is considered to be *in para materia* with section 9 of the Structural Work Act. *Mitseff v. Acme Steel Co.* (N.D. Ill. 1962), 208 F. Supp. 805, 807; *Scully v. Otis Elevator Co.* (1971), 2 Ill. App. 3d 185.

In *Brookside Coal Mining Co. v. (Jacob) Dolph* (1902), 101 Ill. App. 174, the father of a teenage boy brought an action under the Mines Act to recover the damages he suffered when his son was permanently injured in a coal mine. The injured son brought his own action to recover for the personal injuries he sustained (amputation of his foot) due to the defendant's wilful violation of the Act. (*Brookside Coal Mining Co. v. (John R.) Dolph* (1902), 101 Ill. App. 169.) Nevertheless, the father was permitted to recover damages under the Act for the loss of his son's services. *Jacob Dolph* is relevant here, even though it did not involve a loss of consortium action brought by the spouse of an injured worker, because it permitted a party other than the injured worker to recover damages under the Mines Act. Thus, that case illustrates that the term "party injured" in the Mines Act was considered broad enough to include persons other than the worker injured in his person by violation of the Act. As stated, the legislature copied the language in the Mines Act when it drafted section 9 of the Structural Work Act in 1907, six years after *Jacob Dolph* was decided. It is reasonable to assume that the legislature was aware of the construction given to the Mines Act at the time it enacted the Structural Work Act and that it therefore intended to permit a cause of action under the Structural Work Act by someone other than the injured worker. (See *People v. Davis* (1986), 112 Ill. 2d 55, 60; *People v. Agnew* (1985), 105 Ill. 2d 275,

280; see also 2A N. Singer, Sutherland on Statutory Construction §51.02, at 453 (Sands 4th ed. 1984) ("It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. *** Thus, they should all be construed together"); 2A N. Singer, Sutherland on Statutory Construction §49.09, at 400 (Sands 4th ed. 1984) ("where the legislature adopts an expression which has received judicial interpretation, interpretation is prima facie evidence of legislative intent").) Consequently, because the father of an injured worker was allowed to bring an action under the Mines Act for damages he suffered when his son was injured, the spouse of an injured worker should likewise be afforded a cause of action under the Structural Work Act for the injuries he or she suffers as a result of a defendant's wilful violation of the Act.

The legislature's intent to benefit both structural workers and their families is also illustrated by the absence of a damage limitation in the Structural Work Act. As previously noted, the language of the original Scaffolding Act was copied from the language of section 33 of the Mines and Miners Act. Both statutes allowed families to recover where a worker was killed due to a wilful violation of the statute. (Ill. Rev. Stat. 1902, ch. 93, par. 33; Ill. Rev. Stat. 1908, ch. 48, par. 88.) The Mines Act, however, imposed a $5,000 limit on the amount of damages which the family of a deceased worker could recover. (Ill. Rev. Stat. 1902, ch. 93, par. 33.) When the legislature enacted the Scaffolding Act in 1907, it eliminated this damage limitation and set no limit on the amount of damages recoverable under the Act. (Ill. Rev. Stat. 1908, ch. 48, par. 88.) The absence of a damage limitation in the Scaffolding Act was unique. The legislature enacted other statutes, both before and after the Scaffolding Act, which limited the amount which the

families or personal representative of a deceased could recover in a death action (*e.g.*, $10,000 limit under the Wrongful Death Act (Ill. Rev. Stat. 1903, ch. 70, par. 1); $15,000 limit under the Dram Shop Act (Ill. Rev. Stat. 1949, ch. 43, par. 135); $5,000 limit under the Mines and Miners Act (Ill. Rev. Stat. 1902, ch. 93, par. 33), later raised to $10,000 (Ill. Rev. Stat. 1908, ch. 93, par. 33)). Thus, the legislature singled out families of deceased structural workers and gave them an action for unlimited damages while denying the same to families of persons whose deaths occurred as a result of violations of other statutes. (See *Mitseff v. Acme Steel Co.* (N.D. Ill. 1962), 208 F. Supp. 805.) This legislative history suggests that the legislature intended to protect both structural workers and their families when it enacted the Structural Work Act.

Construing the language of section 9 to permit the spouse of an injured worker to bring an action for loss of consortium is entirely consistent with the language and purpose of section 1 of the Act. Section 1 makes clear that the Act is intended to protect those exposed to the risks inherent in structural work activity; activity which the legislature has deemed extremely hazardous. The plaintiff falls within the class which the legislature intended to protect, because her injuries occurred solely because the defendants wilfully failed to provide a structural worker with a safe place to work in violation of the Structural Work Act. Thus, the purpose underlying section 1, of limiting the remedy afforded under the Act to those exposed to the risks inherent in structural work, is fulfilled.

Permitting the spouse of an injured worker to bring a cause of action under section 9 is also consistent with those decisions which have refused to recognize a cause of action under the Act for persons who were not engaged in extrahazardous structural work when their in-

juries were sustained, even if the injury occurred on a construction site. (See, *e.g., Long v. City of New Boston* (1982), 91 Ill. 2d 456 (Act does not apply to volunteer who was stringing lights on a utility pole); *Kelly v. Northwest Community Hospital* (1978), 66 Ill. App. 3d 679 (hospital visitor who wandered into construction area and was injured was not protected under the Act).) These decisions have recognized that the purpose of section 1 of the Structural Work Act is to limit the statute's protection to those persons exposed to the extrahazardous conditions that prevail in the construction industry. The plaintiff does not dispute the validity of those cases, nor does she contend that the Act should apply to all individuals who conceivably might be injured as a result of a wilful violation of the Act. Rather, she submits that she is a protected person under the Act because her injuries arose solely because the defendants wilfully failed to provide a structural worker with a safe place to work in violation of the Structural Work Act. We agree that the plaintiff is within the protection of the Act, since her loss of consortium claim arose only because her spouse was injured while engaged in structural work due to the defendants' failure to comply with the Act.

This court has consistently held that the Structural Work Act should be liberally construed to effectuate its preventative and compensatory purposes. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127; *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536.) As a result, our court has broadly defined other terms in the Structural Work Act, when such a construction promoted the Act's protective and compensatory purposes. For example, in *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, the court extended the Act's protection to workers not expressly covered by the language of the statute. In *Halberstadt*, a commercial window washer was killed in

a fall from a scaffold while cleaning the windows of a high-rise office building. The decedent's spouse and children brought an action for damages under the Structural Work Act. The defendant argued that the decedent was not a protected person under the Act because his activity, "cleaning windows," was not specifically included within the categories stated in sections 1 and 9 of the Act (*e.g.*, erection, repairing, alteration of a building). In *Halberstadt*, as in this case, the court looked beyond the language of the statute and ascertained the legislature's intent from the object and purpose of the statute. The court stated:

> "[T]he function of washing windows is qualitatively comparable to that of repairing or painting a structure. It is a rule of statutory construction that the legislature is presumed not to have intended an absurdity or injustice. [Citations.] *** [T]he appellate court did not create a new classification of those who might be protected by this statute. We therefore hold that the Structural Work Act, which was designed to protect those workmen who are hazardously employed on structures, does include tradesmen who engage in cleaning windows of commercial buildings." (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 128.)

Here, as in *Halberstadt*, we are mindful of our duty to liberally construe the language of section 9 so as to effectuate the preventative and compensatory purposes of the Act. Applying a liberal construction, we conclude that the language of section 9, specifically the term "party injured," was intended to include the spouse of an injured worker. In addition, construing the Act to permit the spouse of an injured worker to bring a cause of action for loss of consortium is consistent with the preventative and compensatory purposes underlying the Act. Accordingly, we hold that an injured worker's spouse who suffers a loss of consortium as a result of a

defendant's wilful violation of the Act is a "party injured" within the meaning of section 9 of the Act.

As additional support for this construction of the Act, we note that the Act has already been construed to permit recovery for loss of consortium in the event of a worker's death. (*Pickett v. Yellow Cab Co.* (1989), 182 Ill. App. 3d 62.) In *Pickett*, the plaintiff's husband died as a result of injuries he sustained when he fell off a scaffold. The trial court dismissed that portion of the plaintiff's complaint which sought damages for loss of consortium, holding that such damages were not recoverable under the Structural Work Act. The appellate court reversed, holding that the spouse of a deceased structural worker may recover damages for loss of consortium under section 9 of the Structural Work Act.

*Pickett* construed that portion of section 9 which states:

"[I]n case of loss of life by reason of such wilful violation * * *, a right of action shall accrue to the surviving spouse of the person so killed, * * * or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives." Ill. Rev. Stat. 1987, ch. 48, par. 69.

That portion of section 9 of the Act expressly creates a cause of action for the spouse of a deceased worker. Thus, the court in *Pickett*, unlike this court, was not required to determine whether the plaintiff was a protected person under the statute. Rather, the issue in *Pickett* was whether damages for loss of consortium were permitted under the statute. In resolving this question, the appellate court first noted that the phrase "a like recovery of damages" used in section 9 meant that the same measure of damages should apply when a violation of the Act results in death as is applicable when a

violation results in injury; that is, " 'any direct damages sustained thereby.' " (*Pickett v. Yellow Cab* (1989), 182 Ill. App. 3d 62, 67, quoting *Mitseff v. Acme Steel Co.* (N.D. Ill. 1962), 208 F. Supp. 805, 807; see Ill. Rev. Stat. 1961, ch. 48, par. 69.) The court then attempted to determine whether "direct damages" included recovery for loss of consortium.

The *Pickett* court initially noted that the term "direct damages" used in the Structural Work Act had been interpreted to include any "pecuniary loss or injury" which the plaintiff sustained as a result of the decedent's death. (*Scully v. Otis Elevator Co.* (1971), 2 Ill. App. 3d 185; *O'Fallon Coal & Mining Co. v. Laquet* (1902), 198 Ill. 125.) The court then observed that this court had construed the term "pecuniary injury" in the Wrongful Death Act to include damages for loss of consortium. (*Elliott v. Willis* (1982), 92 Ill. 2d 530.) The *Pickett* court concluded that, because direct damages under section 9 of the Structural Work Act are measured by the "pecuniary loss" which the injured party suffered, and because loss of consortium is regarded as a "pecuniary loss" under the Wrongful Death Act, loss of consortium should also be regarded as a pecuniary loss under the Structural Work Act. The court could find no rational reason for concluding that loss of consortium should be compensable as a "pecuniary loss" under the Wrongful Death Act, but not under the Structural Work Act. The court therefore determined that damages for the loss of consortium were recoverable as "direct damages" under the Structural Work Act. *Pickett v. Yellow Cab Co.* (1989), 182 Ill. App. 3d 62.

We agree with the *Pickett* court's conclusion that damages for loss of consortium are awardable to the spouse of a deceased worker under the Structural Work Act. As the *Pickett* court correctly observed, the term "direct damages" in the Structural Work Act has been

interpreted to mean the pecuniary losses which the plaintiff sustained due to the decedent's death. (*Scully v. Otis Elevator Co.* (1971), 2 Ill. App. 3d 185; *O'Fallon Coal & Mining Co. v. Laquet* (1902), 198 Ill. 125, 127 (interpreting the "direct damages" provision of the Coal Mining Act).) It is true that, at the time this interpretation was adopted, loss of consortium was not regarded as an element of pecuniary loss. (See *Elliott v. Willis* (1982), 92 Ill. 2d 530 (loss of consortium recognized as an element of "pecuniary loss" under the Wrongful Death Act).) Nevertheless, we agree with the *Pickett* court that there is no rational reason for holding that loss of consortium is a compensable loss under the Wrongful Death Act, but is not a compensable injury under the Structural Work Act, since damages under both statutes are assessed in accordance with the pecuniary loss which the plaintiff sustained. Consequently, damages for loss of consortium are recoverable as "direct damages" under the Structural Work Act.

Given the fact that recovery for loss of consortium is permitted when a worker is killed because of a defendant's wilful violation of the Structural Work Act, logic and fairness dictate that recovery also be allowed when a worker suffers nonfatal injuries because of a defendant's wilful violation of the Act. (See *Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 478 (Rizzi, J., dissenting).) The defendants suggest that the legislature intended to allow a loss of consortium action only when violation of the Act results in the worker's death. Under the defendants' interpretation, if two structural workers are involved in the same accident arising out of a wilful violation of the Act, one suffering irreversible and disabling brain damage and the other being killed, the spouse of the latter would have a cause of action for loss of consortium while the former would not. Such a result would be illogical and contrary to the purpose of

the Act. (See *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127.) As stated, all parts of the statute must be interpreted consistently with the general purpose of the whole act. (2A N. Singer, Sutherland on Statutory Construction §45.05, at 91 (Sands 4th ed. 1984).) The consortium lost by the spouse of a permanently disabled structural worker is no less worthy of compensation than that lost by the spouse of a deceased worker. Indeed, as the plaintiff points out, some catastrophic injuries can impose greater burdens on the spouse than those that death brings. A primary rule of statutory construction is that the legislature is presumed not to have intended an absurdity or injustice. (*People v. Shumpert* (1989), 126 Ill. 2d 345, 352; *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 128.) Moreover, the language of the Act itself demonstrates that the legislature intended to treat the two spouses similarly. Section 9 of the Act states that the party injured by a willful violation of the Act shall have a right of action for "direct damages." Section 9 then grants the surviving spouse of a person killed as a result of a wilful violation of the Act a right of action "for a like recovery of damages." (Ill. Rev. Stat. 1987, ch. 48, par. 69.) This language has been construed to mean that the same measure of damages shall apply when a violation of the Act results in death as is applied in the event of a nonfatal injury. (*Mitseff v. Acme Steel Co.* (N.D. Ill. 1962), 208 F. Supp. 805, 807.) Accordingly, damages for loss of consortium are recoverable as "direct damages" to the spouse of both a fatally and a nonfatally injured structural worker.

Further support for our interpretation of the Act is found in the case law interpreting a similar New York statute. Section 240 of the New York Labor Law (N.Y. Labor Law §240 (McKinney 1986)), like the Illinois Structural Work Act, provides:

"All contractors and owners and their agents *** in the erection, demolition *** or painting *** of a building or structure shall furnish or erect *** scaffolding *** and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." (N.Y. Labor Law §240 (McKinney 1986).)

Because section 240 is similar in scope and purpose to the Illinois Structural Work Act, the manner in which New York courts construe that section has been regarded as a relevant source of authority in construing our statute. (*LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 733-34.) Several New York decisions have permitted the spouse of an injured worker to recover damages for loss of consortium under section 240. (*Spose v. Ragu Foods, Inc.* (1986), 124 A.2d 980, 508 N.Y.S.2d 810; *Bland v. Manocherian* (1985), 66 N.Y.2d 452, 497 N.Y.S.2d 880, 488 N.E.2d 810; *Weaver v. Lazarus* (1983), 93 A.2d 859, 461 N.Y.S.2d 363; *Kalofonos v. State* (1982), 115 Misc. 2d 692, 454 N.Y.S.2d 645, *aff'd* (1984), 104 A.2d 75, 481 N.Y.S.2d 415.) Construing the Illinois Structural Work Act to permit a cause of action for loss of consortium by the spouse of an injured worker is therefore consistent with the construction given to this similar New York statute.

The defendants argue, however, that the legislature is entitled to define the class of persons intended to be protected under a statute and to exclude others from protection. (*Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 473.) The defendants also argue that the appellate court's interpretation of the Act is consistent with the general rule that statutes in derogation of the common law must be strictly construed (*Barthel v. Illinois Central Gulf Ry. Co.* (1978), 74 Ill. 2d 213.) This is not a case, however, in which the language of the statute is so clear and unambiguous as to leave no room for interpretation or construction. The legislature has not

defined the class able to pursue a remedy in section 9 in such a manner as to preclude an action by the spouse of an injured structural worker. On the contrary, we find that the term "party injured" was intended to include an injured worker's spouse who suffers a loss of consortium as a result of the defendant's wilful violation of the Act. Moreover, our court has consistently held that the Act should be liberally construed to effectuate its preventative and compensatory purposes. Our holding here is necessary to carry out the policies which motivated the legislature to enact the Structural Work Act.

The defendants also argue that the plaintiff's loss of consortium claim is barred by this court's decision in *Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159. In *Mitchell*, this court considered whether an action for loss of consortium was governed by the two-year statute of limitations applicable to "[a]ctions for damages for an injury to the person" (Ill. Rev. Stat. 1967, ch. 83, par. 15) or by the five-year statute of limitations pertaining to actions for "damages for an injury done to property, real or personal, *** and all civil actions not otherwise provided for" (Ill. Rev. Stat. 1967, ch. 83, par. 16). In holding that the five-year statute of limitations applied, the *Mitchell* court observed that a loss of consortium action "is based not on an injury to the plaintiff's person but on an injury to a personal relationship established by the marriage contract." *Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 162.

The defendants initially claim that the *Mitchell* court determined that loss of consortium is not an injury to either person or property. The defendants claim that loss of consortium is therefore not recoverable under the Structural Work Act, because the Act creates a right of action only when there is an injury to "person or property." Even if we assume, arguendo, that *Mitchell* did decide that loss of consortium is not an injury to person or prop-

erty, we fail to see any inconsistency between *Mitchell* and our interpretation of the Structural Work Act.

Where there is an injury to person or property occasioned by a wilful violation of the Structural Work Act, a right of action accrues to the "party injured" for "any direct damages sustained." (Ill. Rev. Stat. 1987, ch. 48, par. 69.) The allegations in the plaintiffs' complaint establish the necessary requirements for maintaining a cause of action under section 9. The plaintiff wife here claims that *her husband* suffered an injury to his person as a result of the defendants' wilful violation of the Act and that she suffered a corresponding loss of consortium. She seeks to bring an action under section 9 the Act as a "party injured" for the "direct damages" she suffered as a consequence of the defendants' violation of the Act.

As stated, the language of section 9 (*e.g.*, the term "party injured") is broad enough to include the spouse of an injured worker. In addition, we find that construing the language of section 9 to permit the spouse of an injured worker to bring a cause of action for loss of consortium is necessary to effectuate both the preventive and the compensatory purposes underlying the Structural Work Act. Accordingly, we hold that the spouse of an injured worker who suffers a loss of consortium as a result of a defendant's wilful violation of the Act is a "party injured" within the meaning of section 9. We also conclude, as did the court in *Pickett v. Yellow Cab Co.* (1989), 182 Ill. App. 3d 62, that damages for loss of consortium are recoverable as "direct damages" under the Act.

## II.

### Common Law Claim

Because we conclude that the plaintiffs' complaint properly states a cause of action for loss of consortium under the Structural Work Act, we need not address the al-

ternative contention that the allegations in the complaint adequately state a common law loss of consortium claim.

Accordingly, we reverse the appellate court's decision upholding the dismissal of that portion of the plaintiff's complaint that sought damages for loss of consortium against defendant Lipe. We reverse the judgment of the trial court and remand this cause to the trial court for further proceedings. To the extent that our decision is inconsistent with the appellate court's decision in *Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, that decision is overruled.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*

CHIEF JUSTICE MILLER, dissenting:

The majority concludes that the Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, pars. 60 through 69) authorizes the recovery of damages for loss of consortium by the spouse of a nonfatally injured worker. The court offers a series of reasons in support of this determination but the principal grounds are two: that recognition of the cause of action is consistent with the Structural Work Act's broad deterrent and remedial purposes, and that recognition of the action finds support in the Act's legislative history. In so holding, however, the majority rewrites the language of the statute and legislates what it perceives to be the preferable result, significantly expanding potential liability under the Act. Because I do not agree with the majority that the Structural Work Act authorizes the cause of action asserted here, I respectfully dissent.

The question presented is one of statutory construction, and therefore our task in the instant appeal "is to ascertain and give effect to the intent of the legislature." (*Croissant v. Joliet Park District* (1990), 141 Ill. 2d 449, 455.) "[T]hat inquiry appropriately begins with the lan-

guage of the statute. [Citation.]" (*Metropolitan Life Insurance Co. v. Washburn* (1986), 112 Ill. 2d 486, 492.) Section 1 of the Structural Work Act describes the general duties required by the statute and the persons for whose benefit those duties are imposed. Section 1 states:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1989, ch. 48, par. 60.)

Other sections of the Act impose additional duties.

Section 9 is a remedial provision, prescribing criminal penalties and authorizing the recovery of damages for violations of the Act. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 315.) Regarding the civil remedy provided by the Act, section 9 states, in pertinent part:

> "For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the surviving spouse of the person so killed, the lineal heirs or adopted children of such person, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives." Ill. Rev. Stat. 1989, ch. 48, par. 69.

Thus, the Act grants a cause of action to "the party injured," in the case of nonfatal injuries, and to surviving family members, in the case of fatal injuries. The Act does not separately define the "party injured" who, in the event of nonfatal injuries, is authorized to pursue a civil action. It is clear from the statutory language, however, that the term refers to the persons listed in section 1, for whose benefit the statute was enacted—"any person or persons employed or engaged [on a scaffold or similar device], or passing under or by the same"—and does not include family members of a nonfatally injured worker. Because the statute limits recovery, in the case of nonfatal injuries, to persons employed or engaged on the subject structures, or passing under or by them, I agree with the holding of the appellate court in the present matter, as well as with the holdings of the two other appellate panels to have considered this issue, that the spouse of a nonfatally injured worker has no right of recovery under the Act. 205 Ill. App. 3d at 665; *Allison v. Fluor Engineers, Inc.* (1991), 211 Ill. App. 3d 923, 926; *Martin v. Kiendl Construction Co.* (1982), 108 Ill. App. 3d 468, 470.

As the Structural Work Act does not authorize a separate action by the spouse of a nonfatally injured worker, we need not consider in this case the elements of damages that may be recovered in a suit brought under the Act by surviving family members of a fatally injured worker. Thus, unlike the other members of the court, I express no view here on the merits of the appellate court's decision in *Pickett v. Yellow Cab Co.* (1989), 182 Ill. App. 3d 62, which held that the spouse of a fatally injured structural worker may recover damages for lost society under the Act. (Compare 146 Ill. 2d at 292-93 (agreeing with *Pickett*) with 146 Ill. 2d at 305-06 (Heiple, J., dissenting) (disagreeing with *Pickett*).) We have no need to consider what damages a putative plaintiff may recover until we determine

whether the plaintiff's alleged cause of action exists. Because the Act clearly fails to grant a cause of action in the circumstances presented, *Pickett* can be of no assistance here.

Although the Structural Work Act will be interpreted liberally to effectuate its deterrent and remedial purposes (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127), liberal construction of the Act cannot be used to extend its coverage to persons or activities not properly within the scope of its terms (*Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536). However desirable or undesirable the majority's result might be, the decision whether or not to expand liability under the Act is a matter more appropriately reserved to the collective judgment of the legislature.

The majority opinion also invokes legislative history in support of its novel interpretation of the Act. Specifically, the majority asserts that recovery of the type sought here was permitted under an identical provision in a preexisting statutory scheme, the Mines and Miners Act, which apparently served as the model for the Structural Work Act. (*Mitseff v. Acme Steel Co.* (N.D. Ill. 1962), 208 F. Supp. 805, 806-07.) The majority concludes that the same elements of recovery therefore should be allowed under the analogous provision of the current Act because the legislative drafters, in using the same language, intended to incorporate in the new statute the judicial gloss placed on the earlier provision.

In support of this argument, the majority relies on *Brookside Coal Mining Co. v. (Jacob) Dolph* (1902), 101 Ill. App. 174, and its companion case, *Brookside Coal Mining Co. v. (John R.) Dolph* (1902), 101 Ill. App. 169. In *Jacob Dolph*, the appellate court upheld a judgment awarding damages to a father for lost services resulting from a nonfatal injury sustained by his unemancipated son in a coal mining accident; in *John R. Dolph*, the appellate court up-

held an award of damages to the injured son. In the present case, the majority asserts that the father's recovery of damages for the loss of his son's services in *Jacob Dolph* was predicated on a remedial provision of the Mines and Miners Act that later served as the model for section 9 of the Structural Work Act. The majority believes that the legislature, in later enacting the Structural Work Act, must have been aware of the appellate court's prior construction in *Jacob Dolph* and therefore must have intended to adopt that interpretation when it enacted the same language as section 9 of the Structural Work Act.

As one can see from an examination of *John R. Dolph* and *Jacob Dolph*, however, neither opinion provided the long-ago legislature with the definitive statutory construction the majority now perceives. The minor's cause of action in *John R. Dolph* was based on both common law and statutory grounds. The appellate court rejected the defendant's argument that the verdict was against the manifest weight of the evidence and affirmed the judgment in favor of the minor. In reaching that conclusion, the appellate court determined that the evidence sustained findings of liability on a number of the common law and statutory grounds raised by the minor.

The precise basis for the father's recovery of damages in *Jacob Dolph* is unclear. The opinion in that case contains only an abbreviated discussion of the grounds underlying the father's claim, incorporating by reference the rationale expressed in *John R. Dolph*. In describing the father's action, the opinion states only that Jacob Dolph "brought this suit to recover for loss of service of his minor son, by reason of the injury sustained in appellant's coal mine." (*Jacob Dolph*, 101 Ill. App. at 174.) Without elaboration, the appellate court affirmed the judgment in favor of the father, saying, "Our views as to the liability of appellant for the injury to the son are fully set forth in the opinion filed in his case and need not be repeated. The

amount recovered by appellee as damages for loss of the service of his son, in the light of the evidence, is very reasonable." (101 Ill. App. at 175.) The son's action, it will be recalled, was brought on both common law and statutory grounds, and the son's recovery was affirmed on both bases.

Contrary to the majority's interpretation, there is no reason to assume that the father's recovery of damages in *Jacob Dolph* was predicated on statutory grounds. There is no discussion in that case of the question whether the Mines and Miners Act permitted the parent of a nonfatally injured, unemancipated child to bring an action for lost services, for the defendant apparently did not raise that issue. At common law, however, a parent was allowed to bring an action to recover damages for nonfatal injuries resulting in the loss of a minor's services and earnings. (*Dralle v. Ruder* (1988), 124 Ill. 2d 61, 68.) The opinion in *Jacob Dolph* is consistent with that principle, and the appellate court's affirmance of the judgment in the father's favor may be read as simply giving voice to that doctrine. Perhaps for those reasons the court in *Jacob Dolph* did not take pains to state the precise basis for the parent's action; the minor's complaint in *John R. Dolph*, it will be recalled, sought recovery on independent common law and statutory theories, and the court sustained the minor's recovery on both grounds.

Thus, we cannot determine from the *Dolph* opinions, with any degree of certainty, what particular construction, if any, the legislature intended to adopt when it reenacted the language of the Mines and Miners Act as section 9 of the Structural Work Act. In view of the substantial ambiguities in the two cases, I do not believe that they may be regarded as authority for the proposition the majority ascribes to them.

The majority raises several other points in support of its result, citing, among other things, the absence of a lim-

itation on damages awarded under the Act. All of these contentions must yield, however, to the plain language of the statute, which clearly fails to provide for the cause of action asserted here. Indeed, the majority's analysis ultimately reduces to the claim that the legislature cannot validly distinguish between spouses of nonfatally and fatally injured structural workers, prohibiting recovery in the case of the former and allowing it in the case of the latter. Subject to constitutional limitations, however, it is certainly within the province of the General Assembly to create remedies and to define the classes of persons who may benefit from them. Distinctions of this type will be presumed valid in the absence of a constitutional challenge. I see no basis on which such a challenge could succeed, and none is made in the present appeal. In sum, I would enforce the statute as it is written and hold that the Act does not provide for the cause of action alleged here.

As she did in the appellate court, Mrs. Harvel presses the alternative contention that she may recover damages for loss of consortium under common law principles of negligence, apart from her claim under the Structural Work Act. Mrs. Harvel does not seek recovery on that ground in her complaint, however, alleging there only a violation of the Structural Work Act. Accordingly, we have no occasion in the present case to consider whether this additional theory of recovery is available in the circumstances alleged here.

JUSTICE HEIPLE, also dissenting:

I respectfully dissent from the majority opinion in this case for the simple reason that it usurps the legislative function of the General Assembly under the guise of judicial interpretation. That is to say, it takes a legislative pronouncement which is clear-cut, declares it to be ambiguous and then offers a judicial definition that is preferred by the court. I object to this methodology.

The dispute in this case is whether the spouse of an injured party may maintain a claim for loss of consortium under the Structural Work Act. (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*) Both the trial court and the appellate court looked at the claim, read the language of the Structural Work Act and decided that such a claim would not lie. (205 Ill. App. 3d 661.) The majority of this court believes otherwise.

My disagreement with the decision at hand has nothing to do with the policy question of whether the statute *ought* to afford the sought-after remedy. My disagreement centers on the sole point of whether the statute *in fact* affords that remedy. Clearly, it seems to me, the statute does not afford that remedy.

The statute in question provides relief for "the party injured." (Ill. Rev. Stat. 1987, ch. 48, par. 69.) So far as I am concerned, the phrase "party injured" means just that. It means the party who was injured. It does not mean the spouse of the party or his mother, father, children, brothers, sisters, aunts, or uncles. Had the legislature wanted to include these additional categories of persons, or any of them, it could have done so by so stating. The discussion of the law in this situation was well covered by Presiding Justice Henry Lewis of the appellate court, who authored the majority opinion below which this court now reverses. I cannot improve on Justice Lewis' marshalling of the applicable law and I will not attempt to do so. I invite anyone who wishes to pursue the matter further to read Justice Lewis' opinion. 205 Ill. App. 3d 661.

Finally, I note that the majority, relying and expanding upon *Pickett v. Yellow Cab Co.* (1989), 182 Ill. App. 3d 62 (spouse of a deceased structural worker may recover damages for loss of consortium under the Structural Work Act), concludes that since a loss of consortium claim is permitted when a worker is killed, logic dictates that a loss of consortium claim should also be allowed when a worker

suffers nonfatal injuries because of a defendant's wilful violation of the Act. This argument ignores that when a standard of care is created by the legislature, the legislature is entitled to define the persons to be protected by the statute and can exclude others from that protection. Additionally, the majority in the present case, and the *Pickett* court, reach the erroneous determination that the Structural Work Act permits a loss of consortium claim for the spouse of a deceased worker. This court must assign statutory language its plain and ordinary meaning. Words cannot be read into a statute which are not within the plain intention of the legislature. (*Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24; *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129.) From the plain meaning of section 9 of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 69) if the worker dies, a cause of action for a "like recovery of damages" accrues to the surviving spouse, lineal heirs, or other dependant. When this cause of action accrues to the spouse, her rights are the same, and no greater, than those of the decedent. In essence, the Structural Work Act contains a survival section which permits the spouse to litigate the deceased worker's cause of action, and recover only what the decedent could have recovered if he had lived.

By interpreting the words in the Structural Work Act according to their plain and ordinary meaning, a loss of consortium claim is available to neither the spouse of a deceased worker, nor the spouse of a nonfatally injured worker.

Accordingly, I respectfully dissent from the decision of the court.