NAMEOKI TOWNSHIP *et al.*, Plaintiffs-Appellants, v. GRANITE CITY TOWNSHIP *et al.*, Defendants-Appellees.

Fifth District   No. 5—91—0423

Opinion filed February 9, 1993.—Rehearing denied March 16, 1993.

Irvin C. Slate, Jr., of Granite City, for appellant Nameoki Township.

John Dale Stobbs and James S. Sinclair, both of Stobbs & Sinclair, of Alton, for appellant Chouteau Township.

Mark C. Goldenberg, Susan E. Bacon, and Elizabeth V. Heller, all of Granite City, for appellee City of Granite City.

William W. Schooley, of Law Offices of William W. Schooley, of Granite City, for appellee Township of Granite City.

JUSTICE CHAPMAN delivered the opinion of the court:
Nameoki Township, Chouteau Township, and Granite City Township are situated in Madison County and operate under the Township Law of 1874 (Ill. Rev. Stat. 1991, ch. 139, par. 0.1 *et seq.*). The City of Granite City is a municipality within the meaning and under the governance of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 1—1—1 *et seq.*). For a number of years prior to March 18, 1988, Granite City Township and Granite City were coterminous. On or about December 23, 1987, Granite City annexed a portion of Nameoki Township referred to as the Gorbe subdivision. On March 18, 1988, a referendum was held pursuant to statute (Ill. Rev. Stat. 1989, ch. 139, par. 127) to determine the township by which the Gorbe annexation would be governed. As a result of the referendum, the Gorbe subdivision remained a part of Nameoki Township.

From March 18, 1988, until the date of filing of the complaint in the instant case, Granite City annexed additional territory in Nameoki and Chouteau Townships. On March 9, 1990, the plaintiff townships filed a declaratory judgment action and requested the court to declare that the property annexed by Granite City subsequent to March 18, 1988, had not been brought under the jurisdiction of Granite City Township. The trial court found that, notwithstanding the failure of the March 18, 1988, referendum to disconnect the Gorbe subdivision from Nameoki Township, Granite City and Granite City Township boundaries, while not identical, have remained coterminous under section 1 of the Township Annexation Act (Ill. Rev. Stat. 1991, ch. 139, par. 127). Plaintiffs appeal from the trial court's decision.

It is undisputed that after the March 18, 1988, referendum the Gorbe subdivision remained in Nameoki Township. Nameoki and Chouteau Townships argue that as a result of that referendum Granite City and Granite City Township were no longer coterminous for purposes of section 1 of the Township Annexation Act and, therefore, any parcels Granite City annexed after March 18, 1988, were not au-

tomatically transferred to Granite City Township. Defendants maintain that the City of Granite City and Granite City Township retained their coterminous status even though Granite City's boundaries and Granite City Township's boundaries were no longer identical after the 1988 Nameoki Township referendum on the Gorbe subdivision.

■ In construing a statute, we must ascertain and give effect to the intention of the legislature. (*Harvel v. City of Johnston City* (1992), 146 Ill. 2d 277, 282, 586 N.E.2d 1217, 1220.) The language used in the statute is the primary source for determining legislative intent. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 207, 585 N.E.2d 1032, 1044.) The following, with the exception of the underlined provisions, is an excerpt of section 1 of the Township Annexation Act (Ill. Rev. Stat. 1991, ch. 139, par. 127) as it read on August 11, 1986. The underlined text was added with the adoption of Public Act 86—1299. Pub. Act 86—1299, eff. Jan. 1, 1991 (amending Ill. Rev. Stat. 1989, ch. 139, par. 127).

"Whenever a city which is coterminous with a township proposes to annex any territory in an adjacent township, the city clerk shall, by registered or certified mail, file a certified copy of the annexation ordinance ***. Except as otherwise provided herein, if, within 45 days after the notification, the board of trustees of the township from which the territory is to be disconnected determines by a majority vote of those then holding office that the disconnection would not be in the best interests of that township, the board may request that a referendum approving or disapproving the disconnection be held in that township. The city, its coterminous township and the adjacent township may, however, agree by intergovernmental agreement and without the necessity of a referendum that the territory shall remain part of the adjacent township and shall not become part of the township that is coterminous with the municipality.
                              * * *

If a majority of those voting on the proposition in the township vote in favor thereof, the territory shall be disconnected from the adjacent township and connected to the township which is coterminous with the city. *** If a majority of those voting on the proposition do not vote in favor thereof, the territory shall remain with the adjacent township. ***

Where the proposition to disconnect the territory fails and it remains with the adjacent township, the status quo and opera-

tion of a township and the officers of a township coterminous with a city at the time provided for herein shall not be affected. *** <u>Where the proposition to disconnect fails or the city, its coterminous township and the adjacent township agree by intergovernmental cooperation agreement that the territory shall remain part of the adjacent township, the city may annex such territory and by doing so shall not relinquish its status as a city with a coterminous township.</u>

Within any 12 month period beginning on the date of a coterminous city's first annexation after August 11, 1986, where any parcel of territory lying in an adjacent township is annexed by the city and such parcel constitutes less than 1% and until all such parcels annexed during each such annual period constitute 1% or more of the total equalized assessed value of the adjacent township, each separate parcel shall become disconnected from that township and included in the coterminous township without having the proposition to disconnect submitted to the voters in the adjacent township."

Granite City and Granite City Township argue that the Act as it existed on August 11, 1986, and as it reads today clearly provides that their coterminous status continues, notwithstanding a change in boundaries. Defendants point in particular to that sentence which reads:

"Where the proposition to disconnect the territory fails and it remains with the adjacent township, the status quo and operation of a township and the officers of a township coterminous with a city at the time provided for herein shall not be affected."

Defendants argue that because the statute provides that the status quo is to be maintained, the status of a coterminous city and township does not change. We disagree.

■■ The sentence defendants rely upon sets forth how the governmental function and the status of elected officials of the adjacent township and the township coterminous with a city are affected in the event the proposition to disconnect an adjacent township fails. Nowhere in the sentence defendants rely upon, or in the entire statute as it read prior to the 1991 revision, does the statutory language purport to establish that a city and a township which were coterminous before annexation remain coterminous even though their boundaries are no longer identical. This court will not make hypothetical indulgences into legislative intent. (*Business & Professional People*, 146 Ill. 2d at 208, 585 N.E.2d at 1045.) Before the January 1, 1991, revision

of the Act, the statute contained no language that suggested that co-terminous meant anything other than the plain meaning of that word. While coterminous is not defined in the Act, the word has been defined as "having the same or coincident boundaries." (Webster's Ninth New Collegiate Dictionary 295 (1988).) Had the legislature intended coterminous townships and cities to maintain such status even though they in fact did not have identical boundaries, the legislature could have included express language to that effect. See *Harvel v. City of Johnston City*, 146 Ill. 2d at 282, 586 N.E.2d at 1220.

Defendants contend that the legislative history of Public Act 86—1299 indicates that the legislature intended to preserve the coterminous status of a city township even after a city's identical boundaries with the township were altered as a result of the referendum process provided in the Act. We turn to the legislative history to examine the reason and necessity for amending the Act. (See *Harvel*, 146 Ill. 2d at 283, 586 N.E.2d at 1220.) The legislative deliberations on the bill which led to the passage of Public Act 86—1299 read in part:

"SENATOR RIGNEY: It merely cleans up, or at least provides a clarification on coterminus [*sic*] townships. It makes it clear that coterminus [*sic*] status remains within their governmental structure, even after boundary changes may have occurred during the annexation process.

\* \* \*

SENATOR HAWKINSON: And finally, this Senate Amendment No. 1, then, as I understand it, is not really adding new authority, but is clarifying the Statute to make it clear that the city remains a coterminus [*sic*] city township, even after its city boundaries may no longer be identical to its township boundaries.

\* \* \*

SENATOR RIGNEY: Yes. That is correct. Senate Amendment No. 1 is declarative of existing law in stating that failure of disconnection from the adjacent township does not affect the status of the coterminus [*sic*] city township in its future annexations and disconnections, or its ongoing authority to act within its boundaries as a coterminus [*sic*] city township.

\* \* \*

SENATOR RIGNEY: \* \* \* [A]ll it does is provide a simpler and more streamlined measure to achieve what was contained in that legislation that we passed here a few years back." 86th Ill. Gen. Assem., Senate Proceedings, June 13, 1990, at 69-71 (statements of Senator Rigney and Senator Hawkinson).

While Senator Rigney's first quoted statement appears to support defendants' position, Senator Hawkinson's statement and Senator Rigney's second statement support the plaintiffs' position. As we indicated earlier, the sentence relied upon by the defendants deals with the "status quo and operation of a township." If the legislature had intended it to have the effect defendants attribute to it, there would have been no reason to add the 1991 amendment which deals not with "status quo and operation" but with the "status as a city with a coterminous township." We note the presumption that every statutory amendment is made for some purpose, and we must give effect to the amendment in a manner consistent with that purpose. *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 298, 478 N.E.2d 326, 329.

Senator Rigney's statements do support the premise that the amendment also assures that a change in the boundaries of a city with its coterminous township will not upset the *governmental function* of those entities. For example, under the Township Annexation Act a coterminous city township may consolidate elected officers. Thus, the offices of city treasurer and town collector may be united in the same person; the offices of city and town clerk may be united in the same person. (See Ill. Rev. Stat. 1991, ch. 139, par. 131.) The amendment assures that the status quo will be maintained as to elected officials and the governmental workings of the city and township which were formerly coterminous. The amendment also allows a city and township whose boundaries are not identical to annex property under the statute as if they were coterminous if they had previously been coterminous.

Under the Township Annexation Act, until Granite City annexed parcels beyond the threshold of the 1% equalized assessed valuation within a 12-month period, the annexed townships had no voice in the decision of whether they would become part of Granite City Township. It was not until Granite City annexed property with more than the 1%-equalized-assessed-valuation threshold of the Act that the referendum provision was triggered. Under the Act, even after a coterminous city-township annexes over the 1% threshold, if the city-township is successful in the referendum, it remains a coterminous city-township. It is only when the city-township loses the referendum that its coterminous status for purposes of annexation no longer exists.

■ The Act does not hinder the city from annexing property just because it loses its city-township coterminous status. Even though a city and its township are no longer coterminous, the city may utilize the provisions of article 7 of the Illinois Municipal Code (Ill. Rev. Stat.

1991, ch. 24, par. 7—1—1 *et seq.*) to annex property. The city is free to annex as much property as it was permitted to annex under the Township Annexation Act, but because it is no longer coterminous, it may not unilaterally alter township boundaries. Although it has lost its coterminous status, the city may still have a referendum (Ill. Rev. Stat. 1991, ch. 139, par. 127) or proceed under section 3—1 of the Township Law of 1874 (Ill. Rev. Stat. 1991, ch. 139, par. 25), which authorizes the county board to direct a change in the township boundaries.

■ Granite City and Granite City Township were no longer coterminous after the March 18, 1988, referendum. The city and township, however, did maintain coterminous status under the Act for purposes of the method of selecting officers and the operation of the city-township. In addition, pursuant to the Township Annexation Act, territory annexed to Granite City subsequent to March 18, 1988, was not automatically annexed to Granite City Township. Accordingly, we reverse the judgment of the trial court and remand this case with directions that the trial court enter an order in accordance with this opinion.

Reversed and remanded with directions.

WELCH and LEWIS, JJ., concur.