CHAMPAIGN TOWNSHIP, Plaintiff-Appellant, v. THE COUNTY OF CHAMPAIGN *et al.*, Defendants-Appellees (The Champaign-Urbana Public Health District, Intervenor-Defendant-Appellee).

Fourth District No. 4—01—0911

Argued April 23, 2002.—Opinion filed June 17, 2002.

Gregory E. Pelini (argued), of Champaign, for appellant.

Frederick C. Stavins, City Attorney, of Champaign (Trisha A. Crowley (argued), Deputy City Attorney, of counsel), for appellee City of Champaign.

Frederic M. Grosser, of Law Office of Frederic M. Grosser, of Champaign, for appellee Champaign-Urbana Public Health District.

John C. Piland, State's Attorney, of Urbana (Charisma Tan-Sanchez, Assistant State's Attorney, of counsel), for other appellees.

JUSTICE APPLETON delivered the opinion of the court:

The parties in this case include the City of Champaign (City) as well as two townships with similar names: the City Township of Champaign (east township) and Champaign Township (west township). The City and the east township formerly were coterminous, but now their

boundaries diverge. In November 2000, the west township sought a judicial declaration that after the City and the east township ceased being coterminous, any territory that the City annexed from the west township did not become part of the east township but instead remained in the west township. The west township also sought an injunction consistent with the proposed declaratory judgment. In September 2001, the circuit court entered summary judgment against the west township and in defendants' favor. The west township appeals, arguing that the circuit court misinterpreted section 15—20 of the Township Code (60 ILCS 1/15—20 (West 2000)). We affirm.

## I. BACKGROUND

Before December 7, 1999, the City and the east township had identical boundaries. On December 7, 1999, the City annexed Baytowne Apartments in the west township. During the 12 months preceding December 7, 1999, the City had annexed other territory in the west township. The combined equalized assessed value of Baytowne Apartments and other territory that the City annexed during this 12-month period exceeded 1% of the total equalized assessed value of the west township. Therefore, the west township had a right to determine, by referendum, whether Baytowne Apartments would remain a part of the west township or become part of the east township. See 60 ILCS 1/15—25 (West 1998).

On December 21, 1999, the board of trustees of the west township adopted a resolution stating that disconnecting Baytowne Apartments would be contrary to the best interest of the west township. See 60 ILCS 1/15—15(a) (West 1998). The board requested a referendum, and in the primary election on March 21, 2000, voters in the west township voted against disconnecting Baytowne Apartments from the west township. See 60 ILCS 1/15—15(a) through (c) (West 1998). As a result, Baytowne Apartments remained a part of the west township and did not become part of the east township. See 60 ILCS 1/15—15(e) (West 1998). The City and the east township no longer were coterminous; the City now had territory, Baytowne Apartments, that was outside the east township.

After December 7, 1999, when the City and the east township no longer were coterminous, the City annexed additional territory (disputed territory) in the west township. No one alleges that the City's annexation of the disputed territory triggered the 1% rule in section 15—25 (60 ILCS 1/15—25 (West 1998)) or that the west township ever requested a referendum on that annexation.

On November 27, 2000, the west township filed a complaint, asking the circuit court to enjoin the City, the east township, and their of-

ficials from asserting jurisdiction over the disputed territory. The west township also asked the court to enter a declaratory judgment that after December 7, 1999, when the City and the east township ceased being coterminous, any "territory annexed by the City, including the disputed territory, *** was not disconnected from *** [the west township] and incorporated into the [east township] by operation of [s]ection 15—5(a) of the Township Code" (60 ILCS 1/15—5(a) (West 1998)). The west township named as defendants the City, east township, board of trustees of Champaign County, county clerk, and county treasurer. Later, the parties added the county as a defendant. The Champaign-Urbana Public Health District intervened as a defendant because the case would affect its boundaries.

The parties filed cross-motions for summary judgment. On September 20, 2001, the circuit court denied the west township's motion for summary judgment, granted defendants' motions for summary judgment, and entered the following declaratory judgment:

> "[T]he [east township] continues to be a coterminous township with the [City][,] and annexation to the City results in disconnection of property from the adjacent townships and connection to the [east township], except for that land for which a referend[um] is requested and held pursuant to [s]ection 15—15 of the Township Code (60 ILCS 1[/]15—15 [(West 1998)]), and such referend[um] results in the failure of a proposition to disconnect."

This appeal followed.

## II. ANALYSIS

The material facts are undisputed. This case turns on the meaning of the final sentence in section 15—20 of the Township Code (60 ILCS 1/15—20 (West 1998)). We interpret statutes *de novo*. *Milnes v. Hunt*, 311 Ill. App. 3d 977, 980, 725 N.E.2d 779, 781 (2000).

■ To understand section 15—20, one must read it in the context of other sections of article 15 of the Township Code. A "coterminous city"—that is to say, a city coterminous with a township (60 ILCS 1/15—5(a) (West 1998))—has the power, by annexing territory, to change the boundaries of townships. See 60 ILCS 1/15—15, 15—25 (West 1998). Any city, coterminous or not, can change its own boundaries by annexing territory. *Nameoki Township v. Granite City Township*, 242 Ill. App. 3d 141, 146-47, 610 N.E.2d 111, 114 (1993). A coterminous city, however, when it annexes territory, can thereby change not only its own boundaries but also those of the adjacent and coterminous townships. By annexing territory in an adjacent township, the coterminous city automatically disconnects that territory from the adjacent township and annexes it to the coterminous township. 60 ILCS 1/15—15, 15—25 (West 1998). There are limits, however, to this

power of automatic annexation. If the equalized assessed value of territory that the city annexed from an adjacent township during a 12-month period equals 1% or more of the township's total equalized assessed value, the township may determine, by referendum, whether the parcel will be disconnected. See 60 ILCS 1/15—15, 15—25 (West 1998). Until the city reaches that statutory limit, the disconnection from the adjacent township and incorporation into the coterminous township are automatic whenever the city annexes a parcel of land. 60 ILCS 1/15—25 (West 1998).

The west township interprets article 15 of the Township Code to provide that only a coterminous city can change the boundaries of townships by annexing property. See 60 ILCS 1/15—15, 15—25 (West 1998). It argues that because the City no longer was coterminous when annexing the disputed territory, the disputed territory did not become part of the east township.

■ Section 15—20 of the Township Code reads as follows:

"Where the proposition to disconnect the territory fails and it remains with the adjacent township, the status quo and operation of a township and the officers of a township coterminous with a city at the time provided for in this [a]rticle is not to be affected. Where the proposition to disconnect fails, the status quo of a council of a city that is coterminous with a township at the time provided for in this [a]rticle and that already is vested with the authority to exercise all powers vested in that township is not affected. Where a city coterminous at the time provided for in this [a]rticle has provided by operation of law that certain offices of the city and the coterminous township shall be united in the same person, or that the office and election of highway commissioners shall be discontinued, that provision shall continue to be the case after the proposition to disconnect the territory fails. Where the proposition to disconnect fails, vacancies in any of the township offices in a township coterminous at the time provided for in this [s]ection may continue to be filled by the city council. *Where the proposition to disconnect fails* or the city, its coterminous township, and the adjacent township agree by intergovernmental cooperation agreement that the territory shall remain part of the adjacent township, *the city may annex the territory and*[,] *by doing so*[,] *does not relinquish its status as a city with a coterminous township.*" (Emphases added.) 60 ILCS 1/15—20 (West 1998).

■ When interpreting a statute, we strive to ascertain the legislature's intent and to give effect to that intent. See *People v. Savory*, 197 Ill. 2d 203, 212, 756 N.E.2d 804, 810 (2001). The surest indicator of legislative intent is the language in the statute, and thus our inquiry begins with the statutory text. See *Savory*, 197 Ill. 2d at

212-13, 756 N.E.2d at 810. If the language in the statute is clear and unambiguous, our inquiry ends there. See *Savory*, 197 Ill. 2d at 213, 756 N.E.2d at 810. We will give the words in the statute their plain and ordinary meaning, and if the meaning is clear, we need not resort to other aids of construction. *Savory*, 197 Ill. 2d at 213, 756 N.E.2d at 810.

The final sentence of section 15—20 says: "Where the proposition to disconnect fails ***, the city may annex the territory and[,] by doing so[,] does not relinquish its status as a city with a coterminous township." 60 ILCS 1/15—20 (West 1998). The west township argues that the word "coterminous" is "inherently ambiguous" because one can interpret the word as signifying either (1) the governance of the city and township, (2) automatic annexation, or (3) both. Because the word "coterminous" is ambiguous, the final sentence of section 15—20 also is ambiguous, the west township reasons. We should resolve this purported ambiguity, the west township says, by choosing option (1)—by holding that "coterminous" signifies only governance and not automatic annexation. In other words, when the city's and township's boundaries diverge as a result of the failed referendum, city officials still may occupy the positions of township officials, but the city otherwise relinquishes its status as a coterminous city and cannot automatically annex territory to the formerly coterminous township.

■ We find no ambiguity in the word "coterminous" or in the final sentence of section 15—20. "In construing statutes[,] the ordinary, usual[,] and commonly accepted definitions of the words employed therein are to be taken as the correct definitions of such words, unless the statute gives special definitions to the contrary ***." *Wahlman v. C. Becker Milling Co.*, 279 Ill. 612, 622, 117 N.E. 140, 144 (1917). The Township Code does not specially define "coterminous," and therefore we assume that the legislature used the word in its plain and ordinary sense. "Coterminous" means "having the same or coincident boundaries." Merriam-Webster's Collegiate Dictionary 262 (10th ed. 2000). Far from ambiguous, "coterminous" has a clear, singular meaning. It means neither governance nor automatic annexation but, quite simply, identical boundaries. The final sentence of section 15—20 also is straightforward. If the proposition to disconnect fails, the city may annex the territory, and although the city no longer will have the same boundaries as the township, the city will nevertheless retain its status as a city having the same boundaries as a township.

Under the west township's interpretation, the last sentence of section 15—20 preserves only *part* of the status of a coterminous city: its status with respect to governance. The statute does not so provide. "When the language of a statute is plain and unambiguous, courts

may not read in exceptions, limitations, or other conditions." *In re D.D.*, 196 Ill. 2d 405, 419, 752 N.E.2d 1112, 1120 (2001). When the legislature intended to signify governance alone, it knew how to do so in fitting language. In section 15—20, all of the sentences preceding the final one clearly and explicitly pertain to governance. *Nameoki Township*, 242 Ill. App. 3d at 144, 610 N.E.2d at 113. The final sentence speaks not of governance but of the status of a coterminous city.

We derive support for our interpretation from *Nameoki Township*. The facts in that case are similar to those in the present case. However, the events in *Nameoki Township* occurred before the adoption of Public Act 86—1299 (Pub. Act 86—1299, eff. January 1, 1991 (1990 Ill. Laws 2331—34) (amending Ill. Rev. Stat. 1989, ch. 139, par. 127)), which added the final sentence of section 15—20 to the statute. When the Fifth District decided *Nameoki Township*, the amendment was in force, but the Fifth District had to decide the case under the statute as it existed before the effective date of the amendment.

In *Nameoki Township*, Granite City and Granite City Township were coterminous. *Nameoki Township*, 242 Ill. App. 3d at 142, 610 N.E.2d at 111. Granite City annexed the Gorbe subdivision in Nameoki Township, and in a referendum the voters in Nameoki Township voted against disconnecting the subdivision. *Nameoki Township*, 242 Ill. App. 3d at 142, 610 N.E.2d at 111-12. As a result, the subdivision remained a part of Nameoki Township, and Granite City and Granite City Township no longer had identical boundaries. *Nameoki Township*, 242 Ill. App. 3d at 142-43, 610 N.E.2d at 112. Granite City afterward annexed additional territory. *Nameoki Township*, 242 Ill. App. 3d at 142, 610 N.E.2d at 112. The defendants argued that Granite City retained its status as a coterminous city, even though it was no longer coterminous with the township, and that the additional territory had been automatically annexed to Granite City Township. *Nameoki Township*, 242 Ill. App. 3d at 143, 610 N.E.2d at 112.

The defendants in that case relied upon the following statutory provision (now the first sentence of section 15—20):

> " 'Where the proposition to disconnect the territory fails and it remains with the adjacent township, the status quo and operation of a township and the officers of a township coterminous with a city at the time provided for herein shall not be affected.' " *Nameoki Township*, 242 Ill. App. 3d at 144, 610 N.E.2d at 113, quoting Ill. Rev. Stat. 1991, ch. 139, par. 127.

The defendants argued that because the statute provided that the status quo would be unchanged, the city's status as a coterminous city also would be unchanged. *Nameoki Township*, 242 Ill. App. 3d at 144, 610 N.E.2d at 113.

The Fifth District disagreed with the defendants. The sentence on which the defendants relied pertained only to the governance of the townships. *Nameoki Township*, 242 Ill. App. 3d at 144, 610 N.E.2d at 113. "Had the legislature intended coterminous townships and cities to maintain such status even though they in fact did not have identical boundaries, the legislature could have included express language to that effect." *Nameoki Township*, 242 Ill. App. 3d at 145, 610 N.E.2d at 113. In the 1991 amendment, the legislature added the express language to the statute. If one accepted the defendants' interpretation, "there would have been no reason to add the 1991 amendment[,] which deals not with 'status quo and operation' but with the 'status as a city with a coterminous township.' " *Nameoki Township*, 242 Ill. App. 3d at 146, 610 N.E.2d at 114. Every statutory amendment presumably had a purpose. *Nameoki Township*, 242 Ill. App. 3d at 146, 610 N.E.2d at 114. "The amendment *** allows a city and township whose boundaries are not identical to annex property under the statute *as if they were coterminous if they had previously been coterminous*." *Nameoki Township*, 242 Ill. App. 3d at 146, 610 N.E.2d at 114.

The last-quoted sentence is not *dicta*, contrary to the west township's assertion. It is essential to the court's reasoning. The Fifth District held, in *Nameoki Township*, that prior to the 1991 amendment, the statute did not preserve the status of a coterminous city after the city's and township's boundaries diverged. The Fifth District found support for that holding in the 1991 amendment itself, reasoning that there otherwise would have been no purpose for the amendment.

We need not resort to the legislative debates on the 1991 amendment. The west township concedes that the legislators sometimes contradicted themselves in their remarks and that the debates generally are ambiguous. Nevertheless, the west township quotes from the debates in an attempt to convince us that the final sentence of section 15—20 refers only to governance rather than (as it plainly says) to status as a coterminous city. Some remarks by legislators arguably support the west township's position, but other remarks do not. We will not try to distill the collective intent of the legislature from the remarks of two or three legislators when we have a far clearer and more reliable source for ascertaining that intent: the statute itself. See *Savory*, 197 Ill. 2d at 213, 756 N.E.2d at 810. "[L]egislators do not make laws by making speeches on the floor of the legislative chamber ***. *** Neither the disclosed nor undisclosed intent of a legislator *** becomes *law*; only the bill as it reads when passed becomes law." (Emphasis in original.) *Town of the City of Bloomington v. Bloomington Township*, 233 Ill. App. 3d 724, 736, 599 N.E.2d 62, 70 (1992).

Invoking the rule that statutes should be interpreted in a reasonable manner, the west township argues that the trial court's interpretation of section 15—20 would yield impractical and absurd results and that the interpretation, therefore, must be incorrect. For example, if the City still had the power of automatic annexation, it theoretically could annex the territory surrounding Baytowne Apartments and thereby turn Baytowne Apartments into an "island," "with resulting confusion, inefficiency[,] and difficulty in" providing local governmental services. We do not consider this result to be so "absurd" as to justify a court's disregarding the plain meaning of the statute in the belief that the legislature meant something different. We assume that the legislature foresaw the possible formation of "islands" when it provided that a city "does not relinquish its status as a city with a coterminous township." 60 ILCS 1/15—20 (West 1998). The benefit of automatic annexation is reducing the number of city and township officials providing overlapping services. See *People ex rel. Village of Hinsdale v. Board of Supervisors*, 309 Ill. App. 609, 616, 33 N.E.2d 761, 764 (1941). See 60 ILCS 1/15—50, 15—55 (West 1998). Redundant officers and expenses arguably are "absurd," even when the boundaries of the city and township no longer strictly coincide. Apparently the legislature thought that eliminating one "absurdity" was worth risking the other. It is the legislature's job, not ours, to make public policy. See *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 522, 732 N.E.2d 528, 544 (2000) (" '[C]ourts may not legislate, rewrite[,] or extend legislation. If the statute as enacted seems to operate in certain cases unjustly or inappropriately, the appeal must be to the General Assembly, and not to the court.' [Citation.]").

The west township next argues that preserving the power of automatic annexation would thwart the General Assembly's intent in providing for referenda on proposed disconnections. See 60 ILCS 1/15—15 (West 1998). That intent, according to the west township, was "to provide adjacent townships a mechanism by which to halt the loss of [equalized assessed value]." As some of the defendants point out, the General Assembly obviously never intended to *halt* the disconnection of territory from the adjacent township. If the legislature had so intended, it could have simply repealed article 15. The legislature intended merely to slow down the process and give the adjacent townships time to adjust. A city still can whittle away an adjacent township in increments smaller than 1% of its equalized assessed value over 12 months, without the challenge of a referendum. 60 ILCS 1/15—25 (West 1998); see also 60 ILCS 1/15—30 (West 1998) (providing that for 10 years after the disconnection, the city must compensate the adjacent township for the resulting loss of real estate taxes).

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and STEIGMANN, JJ., concur.